**Henry and Elaine WEISSBUCH,**
**Plaintiffs-Appellees,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED,**
**Defendant-Appellant.**

No. 76–2274.

United States Court of Appeals,
Seventh Circuit.

Argued May 31, 1977.

Decided July 26, 1977.

Peter R. Sonderby, William E. Snyder, Chicago, Ill., for defendant-appellant.

Eugene L. Resnick, Stephen E. Smith, Chicago, Ill., for plaintiffs-appellees.

Before FAIRCHILD and TONE, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

We are faced in this case with the matter of deciding what affect an arbitration clause in an agreement has upon a claim for relief under S.E.C. Rule 10b–5. The litigation arises from the decision of Plaintiff Henry Weissbuch to open a trading account and participate in Merrill Lynch's Money Management Option Program. Paragraph 5 of the Standard Option Agreement signed by plaintiff specifically provides that:

> Any controversy between us arising out of such option transactions or this agreement shall be settled by arbitration before the National Association of Securities Dealers, Incorporated, or the New York Stock Exchange, or the American Stock Exchange, only.

After making their investment, the Weissbuchs not only failed to realize a return on their investment, but lost a substantial amount of their investment as well. Believing that the defendant had misled them with certain untrue and deceptive representations, warranties, and assurances, the plaintiffs filed this suit in the Northern District of Illinois.

The complaint consists of three counts: Action under Rule 10b–5 of the S.E.C. (Count I), Fraud and Deceit (Count II), and Breach of Contract (Count III). Plaintiff seeks both legal and equitable relief.

Defendant, relying on the arbitration clause in the written agreement, moved for a stay of proceedings in the district court. After plaintiffs resisted this motion to stay, the court entered an order holding that the action under Rule 10b–5 was not subject to arbitration, but that the fraud and contract claims were properly arbitrable. The district court denied defendant's motion but stayed arbitration of Counts II and III until the court's final determination of Count I. Defendant brought this appeal pursuant to 28 U.S.C. § 1292(a)(1). It argues that Count I is legally insufficient because it does not adequately allege scienter and, further, that an arbitration agreement is valid and enforcible with respect to a claim arising under Rule 10b–5. Subsequent to the filing of the appeal, plaintiff moved to dismiss the appeal on the grounds that there was no appealable interlocutory order present. Defendant responded and this court deferred ruling on this jurisdictional issue until the presentation of oral argument.

---

* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

## JURISDICTION OF THE APPEAL

■ Plaintiffs seek to preclude this appeal by arguing that Judge Kirkland's stay order is not an appealable interlocutory order under 28 U.S.C. § 1292(a)(1). In essence the plaintiffs argue that their claim is essentially equitable in nature and that therefore the order of the district court was not an order appealable as an injunction. They point out that the Supreme Court has recognized that stay orders in proceedings at law are appealable while those in equitable proceedings are not. *Baltimore Contractors v. Bodinger*, 348 U.S. 176, 184–185, 75 S.Ct. 249, 99 L.Ed. 233 (1955).

The stay order issued by the district court enjoined the arbitration of the two counts seeking money damages. Accordingly, we cannot accept plaintiffs' characterization of this lawsuit as an equitable proceeding for purposes of appeal. This court has explicitly held that a stay order preliminarily enjoining a proceeding in arbitration and denying a stay of its own proceeding as to a Rule 10b–5 claim is an interlocutory injunction within the meaning of 28 U.S.C. § 1292(a)(1). *Alberto-Culver v. Scherk*, 484 F.2d 611, 614 (C.A. 7 1973), *rev'd on other grounds*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). The district court's ruling here is an appealable interlocutory injunction order and the plaintiffs' motion to dismiss the appeal is hereby denied.

## SUFFICIENCY OF THE COMPLAINT

■ Defendant maintains that Count I of the complaint fails to allege facts sufficient to state a claim for relief under Rule 10b–5 because it does not state the presence of "intentional wrongdoing" or "scienter" as recently required by the Supreme Court in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The Court stated there that:

> We granted certiorari to resolve the question whether a private cause of action for damages will lie under § 10(b) and Rule 10b–5 in the absence of any allegation of "scienter"—*intent to deceive, manipulate, or defraud* . . . We conclude that it will not and there-

fore we reverse. 425 U.S. at 193, 96 S.Ct. at 1381 (Emphasis supplied.)

The district court, relying on the Supreme Court's decision in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), held that the complaint was not deficient as a matter of law. In *Conley, supra,* the Court enunciated the standard to be utilized in measuring a complaint for failure to state a claim:

> [A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. 355 U.S. at 45, 78 S.Ct. at 102.

After reviewing the complaint, we are convinced the district court reached the proper conclusion. In paragraph 5 of Count I the plaintiffs allude to "deceptive, fraudulent and manipulative schemes and misrepresentations . . .". These allegations, coupled with the language in paragraphs 7 and 9 make it clear that the plaintiffs' charges go beyond suggestions of mere negligence and contemplate a theory of liability resting upon intentional misconduct. Defendant postulates that the *Conley* formula should not be applied because the core issue here is whether the arbitration agreement is enforcible. We disagree. *Conley* was properly relied upon and the complaint states a claim under Section 10(b) and Rule 10b–5.

## ENFORCIBILITY OF THE ARBITRATION AGREEMENT AS TO COUNT I

■ Defendant next argues that private claims arising under Section 10(b) and Rule 10b–5 should be submitted to arbitration where parties have so agreed. Defendant properly points out that there is a strong national policy favoring the recognition of arbitration agreements as a means of resolving private conflicts short of the more costly and disruptive avenue of litigation. The benefits that accrue from the utilization of such private remedial devices have been approvingly noted by this court. *Butler Products Co. v. Unistruct Corp.*, 367 F.2d 733, 736 (C.A. 7 1966).

There is also, of course, a strong national policy rationale underpinning the Securities Acts of 1933 and 1934. It is clear that the Securities Acts were passed with an eye to the disadvantages confronting the small investor in this area. It was not unreasonable for Congress to provide particular statutory protections for the securities buyer.

The litigation of the validity of arbitration agreements with respect to actions brought pursuant to federal securities laws inevitably brings into collision these two well recognized public policies. The Supreme Court has addressed this vexing confrontation on two earlier occasions. In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Court held that an arbitration agreement was void and unenforcible with respect to an action brought pursuant to § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*. The Court, held that Section 14 of the 1933 Act, 15 U.S.C. § 77n, operated as a bar to the waiver of a 12(2) action through an arbitration clause.

More recently that Court has addressed the issue of whether an arbitration clause in an international agreement, may be enforcible against an action founded upon § 10(b) and Rule 10b–5. In *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Court held that an international agreement containing an arbitration clause was enforcible against a claim arising under Rule 10b–5.

In *Scherk v. Alberto-Culver* the Court noted the "crucial differences" between the international agreement and the agreement involved in *Wilko*. The Court weighed the possible harm to international trade against the policies embodied in the securities laws and concluded that the arbitration clause should have been given deference. Specifically, the court noted:

A parochial refusal by the courts of one country to enforce an international arbitration agreement would not only frustrate these purposes, but would invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages. In the present case, for example, it is not inconceivable that if Scherk had anticipated that Alberto-Culver would be able in this country to enjoin resort to arbitration he might have sought an order in France or some other country enjoining Alberto-Culver from proceeding with its litigation in the United States. Whatever recognition the courts of this country might ultimately have granted to the order of the foreign court, the dicey atmosphere of such a legal no-man's-land would surely damage the fabric of international commerce and trade, and imperil the willingness and ability of businessmen to enter into international commercial agreements.

417 U.S. at 516, 94 S.Ct. at 2456.

The Court in *Scherk* left open the question of whether an arbitration clause would be enforced against a claim arising under Rule 10b–5 where there were no international dimensions involved. The Court did note, however, that only agreements with significant international contacts would be controlled by the holding in *Scherk*:

11. The dissenting opinion argues that our conclusion that *Wilko* is inapplicable to the situation presented in this case will vitiate the force of that decision because parties to transactions with many more direct contacts with this country than in the present case will nonetheless be able to invoke the "talisman" of having an "international contract." *Post*, at 2461. *Concededly, situations may arise where the contacts with foreign countries are so insignificant or attenuated that the holding in* Wilko *would meaningfully apply.* Judicial response to such situations can and should await future litigation in concrete cases. This case, however, provides no basis for a judgment that only United States laws and United States courts should determine this controversy in the face of a solemn agreement between the parties that such controversies be resolved elsewhere. The only contact between the United States and the transaction involved here is the fact that Alberto-Culver is an American corporation and the occurrence of some—but by no means the greater part—of the pre-contract ne-

gotiations in this county. To determine that "american standards of fairness," *Post*, at 2461, must nonetheless govern the controversy demeans the standards of justice elsewhere in the world, and unnecessarily exalts the primacy of United States law over the laws of other countries.

417 U.S. at 517 n. 11, 94 S.Ct. at 2456 (Emphasis added.)

Another consideration at play in both the *Wilko* and *Scherk* cases was the bargaining posture of the parties. The holding in *Wilko* was directed at protecting what Justice (then Judge) Stevens identified in his Court of Appeals *Scherk* dissent (484 F.2d 611, 617) as "the relatively uninformed individual investor". Lacking bargaining power and extensive information about his investment, this type of individual is most vulnerable to securities swindles and in most need of the special protections and remedies afforded by the Securities laws. It would be admittedly incongruous to attach this kind of disparity in leverage to the situation in *Scherk* where both parties possessed formidable financial interests and where their arbitration agreement emerged from a period of prolonged and extensive negotiations. Under such circumstances, the waiver of a statutory remedy in the courts could be realistically perceived as the product of a bargain. There are many factors that might lead international parties to resolve future controversies through a forum of their own choosing.

The position of the plaintiff in the instant suit, however, can hardly be analogized to the posture of Alberto-Culver Company. The contract signed was defendant's "Standard Option Agreement" and there are no international considerations at play as were present in *Scherk*. The plaintiffs here are clearly the type of individuals whom Justice Stevens, in his *Scherk* dissent, envisioned would be in need of protection.

Defendant maintains that *Wilko* should not be applied to bar the arbitration of claims arising under Rule 10b–5 because the right of action under Rule 10b–5 has been judicially created and that, therefore, there would be no violation of the anti-waiver provision, Section 29(a), of the 1934 Act. 15 U.S.C. § 78cc(a). This distinction did not go unnoticed by the Supreme Court in *Alberto-Culver*:

At the outset, a colorable argument could be made that even the semantic reasoning of the *Wilko* opinion does not control the case before us. *Wilko* concerned a suit brought under § 12(2) of the Securities Act of 1933, which provides a defrauded purchaser with the "special right" of a private remedy for civil liability, 346 U.S. at 431, 74 S.Ct. at 184. There is no statutory counterpart of § 12(2) in the Securities Exchange Act of 1934, and neither § 10(b) of that Act nor Rule 10b–5 speaks of a private remedy to redress violations of the kind alleged here. *While federal case law has established that § 10(b) and Rule 10b–5 create an implied private cause of action . . .* [Citations omitted], *the Act itself does not establish the "special right" that the Court in Wilko found significant.* Furthermore, while both the Securities Act of 1933 and the Securities Exchange Act of 1934 contain sections barring waiver of compliance with any "provision" of the respective Acts, certain of the "provisions" of the 1933 Act that the Court held could not be waived by Wilko's agreement to arbitrate find no counterpart in the 1934 Act. (417 U.S. at 513–14, 94 S.Ct. at 2454; emphasis added.)

The differences between the 1933 and 1934 Acts notwithstanding, we nevertheless continue to adhere to our belief that policy considerations mandate the application of *Wilko* to Rule 10b–5 situations absent the presence of international concerns. When confronted with this question, the Third Circuit reached a similar conclusion and resolved the conflict in favor of the individual investor. *Ayres v. Merrill, Lynch, Pierce, Fenner & Smith Incorporated*, 538 F.2d 532 (C.A. 3 1976), *cert. denied*, 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976). As the Court there stated:

In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme

Court held that the anti-waiver provision of the Securities Act of 1933, 15 U.S.C. § 77n, which is almost identical to § 29(a) of the 1934 Act, 15 U.S.C. § 78cc(a), rendered "void" a prospective agreement between a brokerage firm and a customer which would have required arbitration of the customer's claim under § 12(2) of the 1933 Act. We need not review here the fundamental and important differences between litigation in a court and arbitration. It is enough to say that the Supreme Court found prospective waivers of the right to judicial trial and review to be inconsistent with Congress' overriding concern for the protection of investors. *Wilko v. Swan, supra,* 346 U.S. at 437, 74 S.Ct. 182; see *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 512, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). As Merrill Lynch points out, a "colorable argument can be made" that *Wilko v. Swan* should not apply to arbitration of judicially implied causes of action under the 1934 Act. We are not, however, persuaded that either the differences between the rights granted in the 1933 and 1934 Acts or any consideration of policy warrant such a distinction. And we note that Congress appears to have accepted the view that *Wilko v. Swan* applies in the 10b–5 context. *Cf.* H.R.Rep.No.94–229, 94th Cong., 1st Sess., at 111 (1975), U.S.Code Cong. & Admin.News, 1975, p. 321. 538 F.2d at 536–37.

For the reasons discussed above; the decision of the district court should be and hereby is AFFIRMED.