**Oscar AUSTAD, Plaintiff,**

v.

**DREXEL BURNHAM LAMBERT, INC., Defendant.**

**No. 85C9759.**

United States District Court, N.D. Illinois, E.D.

March 27, 1986.

Joseph E. Coughlin, M. Nicole Marcey, Shelley L. Rice, Lord, Bissell & Brook, Chicago, Ill., for plaintiff.

Steven L. Bashwiner and Mary Ellen Hennessy, Katten, Muchin, Zavis, Pearl Greenberger & Galler, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

In March 1982, plaintiff, Oscar Austad, opened a trading account with defendant, Drexel Burnham Lambert, Inc., on his own behalf. Plaintiff continued as a customer of defendant until about November 1984. On November 19, 1985, plaintiff filed a complaint against defendant seeking recovery for losses allegedly incurred as a result of defendant's fraudulent conduct in connection with trades in Austad's account between February 1983 and November 1984. Count I of plaintiff's complaint alleges that defendant violated Section 12(2) of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. § 77l(2). Count II alleges violations of § 10(b) of the Securities Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b), and S.E.C. Rule 10b–5. Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (1970), defendant now moves for an order compelling enforcement against Count II of the arbitration clause in the parties' agreement, and a stay of proceedings on Count I pending outcome of the arbitration.

## I

The first issue presented is whether the arbitration clause in the agreement between the parties is enforceable as to a Rule 10b–5 claim. The Federal Arbitration Act provides that a written agreement to arbitrate controversies arising out of a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Despite this language in the Arbitration Act, a longstanding rule precludes enforcement of arbitration clauses to resolve disputes arising under the 1933 Act. *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). The *Wilko* Court was not faced with the question whether causes of action under the 1934 Act also are exempt from arbitration. However, numerous lower courts, including the Seventh Circuit Court of Appeals, have explicitly extended the *Wilko* rule to causes of action under § 10(b) of the 1934 Act. *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 558 F.2d 831, 833–35 (7th Cir.1977). The Seventh Circuit reasoned that strong public policy considerations counseled in favor of

extending the *Wilko* preclusion to 1934 Act claims. *Id.* at 834.

The Supreme Court has yet to decide the question of the application of arbitration clauses to 1934 Act claims. However, on three occasions it has strongly suggested that agreements to arbitrate ought to be enforced against such claims. The first occasion was *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). In *Scherk,* the Court held that an international agreement containing an arbitration clause was enforceable against a claim arising under the 1934 Act. The court based its holding on the possible harm to international trade if such international agreements are not enforced by American courts. The Court specifically left open the question whether an arbitration clause contained in a domestic agreement would also be enforced against a 1934 Act claim. Despite reserving ruling on this question, the Court nevertheless expressed serious doubts about the applicability of the *Wilko* holding to 1934 Act claims. *Id.* at 513–14, 94 S.Ct. at 2454–55.

The next time the Court advanced its views on the issue occurred in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). *Byrd* involved an appeal of a Ninth Circuit decision refusing to compel arbitration of pendent state-law claims when the federal court would in any event assert jurisdiction over a federal-law claim. The petitioner, along with *amici* representing the securities industry, urged the Court to resolve the question of *Wilko's* applicability to 1934 Act claims. The Court declined to do so because the petitioner had not asked the district court to compel arbitration of that claim. Therefore, the Court reasoned, the question was not properly before it. 105 S.Ct. at 1240 n. 1. However, the Court did

note that *Scherk* had questioned the applicability of *Wilko* to 1934 Act claims.

But Justice White went further. In his concurrence, he reiterated the distinctions pointed out in *Scherk* between the 1933 Act and the 1934 Act. He concluded that the question of *Wilko's* applicability to 10b–5 claims "remains open and the contrary holdings of the lower courts must be viewed with some doubt." *Byrd,* 105 S.Ct. 1244 (White, J., concurring).

After *Byrd,* numerous district courts have declined to follow prior decisions which had extended *Wilko* to 1934 Act claims. These post-*Byrd* courts have specifically held that the Federal Arbitration Act compels enforcement of arbitration agreements against 10b–5 claims.[1] These decisions are based on the strong federal policy favoring enforcement of arbitration agreements, as recognized by the Supreme Court in *Byrd,* 105 S.Ct. at 1241–42 and in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

*Mitsubishi Motors v. Soler-Chrysler-Plymouth,* —— U.S. ——, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) is the third case in which the Supreme Court used language that casts serious doubt upon the applicability of *Wilko* to 1934 Act claims. *Mitsubishi,* like *Scherk,* involved the validity of an international arbitration agreement, this time as applied to an antitrust claim. As in *Scherk,* the Court in *Mitsubishi* held that the possibility of harm to international trade required enforcement of the arbitration agreement. The Court declined to consider whether such a clause would be enforceable against an antitrust claim arising from a domestic agreement. *Mitsubishi,* 105 S.Ct. at 3355. However, in deciding the threshold issue of whether the parties had agreed to arbitrate the dispute, the Court opined that the Arbitration Act requires

---

1. *McMahon v. Shearson/American Exp., Inc.,* 618 F.Supp. 384, 387–89 (D.C.N.Y.1985); *Jarvis v. Dean Witter Reynolds, Inc.,* 614 F.Supp. 1146, 1148–50 (D.Ut.1985); *Land v. Dean Witter Reynolds,* 617 F.Supp. 52 (E.D.Va.1985); *West v. Drexel Burnham Lambert, Inc.,* 623 F.Supp. 26 (W.D.Wash.1985); *Dees v. Distenfield,* 618

F.Supp. 123 (C.D.Cal.1985); *Raiford v. Merrill Lynch, Pierce, Fenner & Smith,* No. 83–685–A (N.D.Ga. May 16, 1985); *Gregory v. Merrill Lynch, Pierce, Fenner & Smith,* No. 84–1647 (M.D.Fla. March 9, 1985) [Available on WEST-LAW, DCTU database].

enforcement of arbitration agreements against claims implicating statutory rights, unless Congressional intention to the contrary is expressed either explicitly in the statute conferring the rights, or in the statute's legislative history. *Mitsubishi,* 105 S.Ct. at 3355.[2]

Despite this recent assault on the decisions which hold that 10b–5 claims are not arbitrable, plaintiff contends that this court is bound by the Seventh Circuit decision in *Weissbuch,* 558 F.2d 831. Plaintiff urges the court to follow Judge Leighton's resolution of this issue in *Robert A. Stone & Associates v. Drexel Burnham Lambert, Inc.,* No. 85 C 6925 (N.D.Ill. Nov. 15, 1985) [Available on WESTLAW, DCTU database]. There Judge Leighton held that the court was bound to follow *Weissbuch* until either the Supreme Court or the Seventh Circuit Court of Appeals held otherwise. *Stone* at 6–7.

However, for a number of reasons, this court declines to follow Judge Leighton's decision. First, in his decision Judge Leighton did not specifically address the question whether a district court is bound to follow appellate court precedent when the reasoning of that precedent has been seriously undermined by recent Supreme Court pronouncements. The Seventh Circuit has explicitly recognized that a lower court may properly decline to follow a decision of a higher court when convinced that the higher court would overrule its earlier decision if it had an opportunity to do so. *Indianapolis Airport v. American Airlines, Inc.,* 733 F.2d 1262, 1272 (7th Cir. 1984). As a result of the recent developments in the law on this issue, at least one other district court has declined to follow precedent in its circuit which had held that 10b–5 claims are not arbitrable. *See McMahon v. Shearson/American Exp. Inc.,* 618 F.Supp. 384, 389 (D.C.N.Y.1985), declining to follow the holding of *Allegaert v. Perot,* 548 F.2d 432 (2d Cir.1977) that 1934 Act claims are not arbitrable.

Second, Judge Leighton's decision was made before *Mitsubishi* was decided. The principles articulated by the Court in *Mitsubishi* call into question the soundness of *Weissbuch*'s premise that the public policy interest in protecting the small investor requires that 1934 Act claims be resolved only in the judicial forum. In *Mitsubishi,* the Supreme Court rejected the idea that arbitration inherently affords insufficient protection of statutory rights:

> By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality and expedition of arbitration.

*Mitsubishi,* 105 S.Ct. at 3555.

■ In sum, because of the distinctions between the 1933 Act and the 1934 Act, as pointed out by Justice White in *Byrd,* and because of the strong national policy favoring arbitration, the court holds that the *Wilko* doctrine does not extend to plaintiff's Section 10(b) claims in Count II.

Having decided that the 10b–5 claim is arbitrable, the court must next address plaintiff's contention that the arbitration clause at issue here does not encompass the Section 10b–5 claim. Plaintiff contends that the clause specifically excludes federal securities law claims from the agreement to arbitrate disputes. In relevant part the arbitration clause found in ¶ 16 of the Customer Agreement provides:

> Any controversy between you and the undersigned arising out of said account or relating to this contract or breach thereof, shall be settled by arbitration. . . . Certain decisions by the federal court have held that if a dispute involves a claim arising under the Securities Act of 1933 or the Securities Exchange Act

---

**2.** Citing *Mitsubishi* as support, at least two other district court decisions have joined those which hold that 10b–5 claims are arbitrable. *E.g., Chandler v. Drexel Burnham Lambert,* 633 F.Supp. 760, (N.D.Ga.1985); *Greenstein v. First Biscayne Corp.,* No. 82–0584–Civ. (S.D.Fla. May 16, 1985).

of 1934, such arbitration clauses are void and unenforceable as applied to such claims and accordingly customers cannot be compelled to arbitrate such a claim. In other contexts, the courts generally enforce arbitration clauses in customers' agreements. Therefore, *nothing in this paragraph shall in any way constitute a waiver or limitation of any rights which the undersigned may have under any Federal Securities laws.* (Emphasis added).

Relying on the analysis of an identical provision in *Hammerman v. Peacock*, Fed. Sec.L.Rep. (CCH) ¶ 92, 239 (D.D.C.1985) [Available on WESTLAW, DCTU database], plaintiff argues that the language in ¶ 16 evidences the parties' intent that the state of the law at the time of execution was to control the matter of arbitration of federal securities claims. At the time the parties signed the agreement it was a generally accepted legal principle that the *Wilko* rule of non-arbitration was applied to every type of federal securities claims, including claims arising under section 10(b) and Rule 10b–5. *Hammerman*, at p. 91,-705. Thus, plaintiff argues, the arbitration clause cannot be construed to require arbitration of 10b–5 claims. The court is unpersuaded by this argument.

■ More convincing is the analysis of this same provision in *Chandler v. Drexel Burnham Lambert, Inc.*, 633 F.Supp. 760, 762–63 (N.D.Ga.1985). There the court enumerates a number of reasons for its finding that the arbitration clause could be read to compel arbitration of Section 10(b) claims. First, the clause merely advises plaintiff of the current state of the law. Second, the clause was, at best, ambiguous, and under the Supreme Court's holding in

*Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941–42, any ambiguity had to be resolved in favor of arbitration. Third, the words "may have" in the last sentence of the anti-waiver provision indicated that the plaintiff's rights under the federal securities laws were uncertain. Fourth, in *Mitsubishi*, the Supreme Court stated that, unless Congress has specifically indicated to the contrary, the substantive protection afforded by a given statute does not include protection against waiver of the right to a judicial forum. Finally, the Supreme Court has made clear that Congress intends the courts to vigorously and liberally apply the Arbitration Act.[3] This court is persuaded by the *Chandler* reasoning and therefore finds that the arbitration agreement can be construed to require arbitration of plaintiff's 10b–5 claim.[4]

■ Finally, plaintiff urges that an S.E.C. regulation precludes enforcement of arbitration agreements executed between a broker-dealer and its customer. S.E.C. Reg. § 240.15C2.2(b). This argument too must fail. As defendant points out, plaintiff's proposition is not supported by any case law. Moreover, while the S.E.C. has broad authority to carry out its statutory purposes, it has no authority to enlarge or restrict the forums legally available to parties to litigate claims arising under the federal securities laws. *Pruzan v. Paine, Webber, Jackson & Curtis, Inc.*, No. C84–2016A, slip op. at 6 (N.D.Ga. Aug. 1985). Accordingly, the court finds that the arbitration clause requires arbitration of the claim in Count II.

## II

Defendant has also moved for a stay of proceedings on Count I, the 1933 Act claim,

---

**3.** *See, e.g., Mitsubishi,* 105 S.Ct. at 3355 ("[C]ongressional policy manifested in the federal Arbitration Act ... requires courts to liberally construe the scope of arbitration agreements ..."); *United States Steelworkers of America v. Warrior & Gulf Naviation & Co.,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960) (Absent "any express provision excluding a particular grievance from arbitration only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail ...").

**4.** *Accord, Finkle and Ross v. A.G. Becker Parties, Inc.,* 622 F.Supp. 1505, Fed.Sec.L.Rep. (CCH) ¶ 92, 39a (S.D.N.Y.1985) and *West v. Drexel Burnham Lambert, Inc.,* 623 F.Supp. 26 (W.D. Wa.1985) holding that clauses nearly identical to the one in this case could be construed to require arbitration of § 10(b) claims.

pending the outcome of any arbitration proceeding on Count II. Defendant advances two reasons for this request. One, that a stay will avoid the expense and duplication of litigating similar claims in two separate forums. Two, defendant "believes" that Count I is untimely.

As to defendant's first reason, the court notes that the availability of arbitration to resolve one claim of a plaintiff will often result in inefficiency where arbitration is not available for the other claims. This, however, is an insufficient basis upon which to deny to plaintiff his right to pursue his non-arbitrable claim in the only forum available to him for that claim. *Cf. Byrd,* 105 S.Ct. at 1242–1243 (arbitration of some claims may result in "piecemeal" litigation, where the other claims remain with the court, but that is the unfortunate by-product of the Arbitration Act).

Defendant's second reason for its request of a stay is also without merit. If defendant believes Count I is untimely, defendant ought to file a motion to dismiss, which sets forth the law and facts to support its contention.

### CONCLUSION

For the foregoing reasons, defendant's motion to compel arbitration of Count II is granted. The motion to stay proceedings on Count I is denied.