Louis L. STEINBERG, Plaintiff,

v.

The ILLINOIS COMPANY INCORPORATED, a Delaware corporation, and John A. Raasch, Defendants.

No. 85 C 7131.

United States District Court, N.D. Illinois, E.D.

May 15, 1986.

M. Leslie Kite, David Schachman, M. Leslie Kite & Associates, Chicago, Ill., for plaintiff.

John J. Enright, Rosemary J. Guadnolo, Andrew B. David, Arvey, Hodes, Costello & Burman, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

DUFF, District Judge.

Defendants The Illinois Company Incorporated ("Illinois Company") and John A. Raasch ("Raasch") move to compel arbitration of Count I and Counts III through VI of the complaint and to stay arbitration of Count II.

### FACTS

Plaintiff Louis L. Steinberg brings this action against his securities broker, Illinois Company, and its employee, John Raasch, the account executive in charge of plaintiff's account. Count I of the complaint alleges violation of § 10(b) of the Federal Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.–10b–5. Count II alleges violation of § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (2). Count III alleges violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* Count IV alleges common law fraud, Count V alleges negligence, and Count VI alleges breach of fiduciary duty.

Defendants seek arbitration of all counts except Count II, pursuant to the arbitration clause of the customer agreement executed

on April 3, 1980, by plaintiff and the Illinois Company.[1]

### DISCUSSION

#### 1. *Preliminary Issues*

Arbitration is required if the dispute is within the scope of the agreement and if there are no legal restraints on arbitration beyond the contract. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* — U.S. ——, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The allegations in the complaint clearly fall within the scope of the agreement. The issue here is whether plaintiff's 10b-5 and RICO claims should be subject to arbitration.

■ Before reaching that issue, two arguments which plaintiff makes against arbitration should be considered. Plaintiff argues that arbitration should be denied because defendants failed to comply with Rule 15c2-2 of the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.15c2-2, which became effective December 28, 1983. Rule 15c2-2 prohibits brokers from entering into an agreement which "purports to bind the customer to the arbitration of future disputes between them arising under federal securities laws". Where the customer agreement predates the effective date of the rule, as is the case here, the broker must send the customer a disclosure statement[2] notifying him that he is not required to arbitrate federal securities claims and that he may pursue such a claim in the courts.

Rule 15c2-2 was enacted prior to the recent Supreme Court cases, discussed below, which set forth the strong federal policy in favor of arbitration. The rule was enacted to ensure that brokers would not mislead customers into believing that they had no remedy in court when in fact claims under the Securities Act of 1933 are not subject to arbitration. Plaintiff's presence before the court belies the fact that he was misled concerning the availability of judicial remedies for securities violations.

It has been held that Rule 15c2-2 is "procedural, providing only for notice to the customer and [it] does not act substantively to prevent arbitration of all federal claims." *Shotto v. Laub,* 632 F.Supp. 516 (D.C.Md.1986). *See also Colangelo v. Dean Witter Reynolds, Inc.,* CCH Fed.Sec. L.Rpts. ¶ 92,365 (M.D.Fla. July 23, 1985). Therefore defendants' compliance with the rule does not affect the arbitrability of this dispute.

■ Plaintiff also argues that his claims against John Raasch are not subject to arbitration since Raasch did not sign the customer agreement. This argument is without merit. Raasch was clearly acting as agent for Illinois Company and the dispute between Raasch and plaintiff is within the scope of the arbitration agreement. *See Okcuoglu v. Hess, Grant & Co., Inc.,* 580 F.Supp. 749 (E.D.Pa.1984).

The more difficult questions are presented by plaintiff's arguments concerning the arbitrability of 10b-5 and RICO claims.

#### 2. *Arbitrability of 10b-5 Claims*

■ In 1953, the Supreme Court held that an arbitration agreement between a securities broker and its customer should not be enforced so as to require arbitration

---

**1.** The arbitration agreement provides that:

Any controversy between you and the undersigned arising out of or related to this contract or to the breach thereof, shall be settled in Cook County, Illinois as to disputes arising in the State of Illinois or in New York County as to all disputes arising in the State of New York. Such arbitration shall be in accordance with the rules of either the American Arbitration Association or the Board of Arbitration of any stock, option or commodity exchange of which you are a member, as the undersigned may elect.

**2.** The Rule 15c2-2 disclosure statement is as follows:

Although you have signed a customer agreement form with FIRM NAME that states that you are required to arbitrate any future dispute or controversy that may arise between us, you are not required to arbitrate any dispute or controversy that arises under the federal securities laws but instead can resolve any such dispute or controversy through litigation in the courts.

of a claim brought under the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).[3] The Court considered the provisions of the 1933 Act which expressly created a private right of action, which prohibited the waiver of such a judicial remedy and which gave the plaintiff a choice of forum, and the Court concluded that Congress intended claims under the Act to be resolved in court and not in arbitration.

Whether *Wilko* should be extended to prevent arbitration of claims arising under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* is unsettled.

In *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Supreme Court considered the issue in the context of an international agreement and held that a 10b–5 action which arose from Alberto-Culver's agreement to purchase a German manufacturing plant was subject to arbitration. The Court stated that "a colorable argument could be made that even the semantic reasoning of the *Wilko* opinion" does not foreclose the arbitration of a 10b–5 action, since the 1934 Act did not create an express private right of action, did not give plaintiff a choice of forum and since the non-waiver provisions of the two Acts were different. 417 U.S. at 513, 94 S.Ct. at 2454.

The "crucial difference" for the Court in *Scherk,* however, was that the request for arbitration was made in the context of international trade. The Court concluded that refusing to enforce an international arbitration agreement would "surely damage the fabric of international commerce and trade, and imperil the willingness and ability of businessmen to enter into international commercial agreements." 417 U.S. at 517, 94 S.Ct. at 2456.

The Seventh Circuit considered this issue and the *Scherk* decision in *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 558 F.2d 831 (7th Cir.1977). The court concluded that the *Scherk* decision rested on the fact that the arbitration clause was

part of an international agreement. The *Weissbuch* court held that despite the differences between the 1933 and the 1934 Acts, policy considerations mandated the application of *Wilko* to 10b–5 cases "absent the presence of international concerns." 558 F.2d at 835.

This court is convinced that in light of recent Supreme Court cases, the Seventh Circuit would no longer follow *Weissbuch.* In *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Court noted that *Scherk* had questioned the applicability of *Wilko* to 10b–5 actions but, as in *Scherk,* the Court did not decide the issue. The Court did decide that the presence of non-arbitrable federal claims should not prevent the arbitration of state claims and strongly reiterated the federal policy in favor of arbitration. The Court stated that the Arbitration Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." 105 S.Ct. at 1241 (emphasis in original).

Justice White, concurring in *Byrd,* did state that *Wilko* should not apply to 10b–5 actions, citing the statutory differences between the 1933 and 1934 Acts as discussed in *Scherk.* 105 S.Ct. at 1244.

The Supreme Court again stated its preference for arbitration in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* —— U.S. ——, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), where it held that a claim under the Sherman Act would be subject to arbitration where such a claim was within the scope of a predispute agreement. The Court stated that "[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by statute; it only submits to their resolution in an arbitral, rather than a judicial forum." 105 S.Ct. at 3355.

Similarly, a party would not forego the substantive rights afforded by the Securi-

---

**3.** It is not disputed that under *Wilko,* Count II is     not arbitrable.

ties Exchange Act of 1934 by submitting such a claim to arbitration. The policy considerations which concerned the *Weissbuch* court would not be abandoned in arbitration but would simply be addressed in a different forum.

While the Supreme Court has yet to hold that 10b–5 actions arising from domestic agreements are subject to arbitration, its recent pronouncements convince this court that this Circuit would no longer follow *Weissbuch* and would submit 10b–5 actions to arbitration. *See Austad v. Drexel Burnham Lambert, Inc.*, 638 F.Supp. 480 (N.D.Ill.1986) (Williams, J.); *contra, Winkler v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 85 C 9120, slip op. (N.D.Ill. Apr. 25, 1986) (Aspen, J.).

### 3. *Arbitrability of RICO claims*

■ Whether RICO actions should be subject to arbitration is similarly unsettled. The Fifth Circuit and several district courts have refused to order arbitration of RICO actions.[4] Other district courts, relying on the recent Supreme Court cases discussed above, have ordered RICO claims arbitrated.[5]

In concluding that antitrust claims are subject to arbitration, the Supreme Court in *Mitsubishi* said that a statutory claim is subject to arbitration unless Congress has provided otherwise. The Court stated that:

> We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history. See *Wilko v. Swan, supra.* Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver

of judicial remedies for the statutory rights at issue.

105 S.Ct. at 3355.

Plaintiff has not presented and this court has not unearthed anything in the text or legislative history of RICO which suggests that Congress intended to preclude a waiver of the judicial remedy for RICO violations.

Those courts which have denied arbitration of RICO claims have followed the reasoning in *S.A. Mineracao Da Trindade-Samitri v. Utah International*, 576 F.Supp. 566 (S.D.N.Y.1983), *aff'd* 745 F.2d 190 (2d Cir.1984). In *Mineracao*, the defendants sought arbitration of RICO claims arising from an international iron ore mining venture. The court held that the RICO claims are not arbitrable because RICO actions serve the public's interest in combating organized crime and therefore touch concerns beyond those of the parties who entered into the arbitration agreement. The court followed *American Safety Equipment v. J.P. Maguire & Co.*, 391 F.2d 821 (2d Cir.1968), where the Second Circuit held that an antitrust claim is not subject to arbitration because it is brought by a plaintiff who acts as "a private attorney-general who protects the public's interest."

*Mitsubishi* explicitly rejected the reasoning of *American Safety* and implicitly undermined the authority of the *Mineracao* line of cases. 105 S.Ct. at 3357–60. The Court in *Mitsubishi* considered that the public interest served by antitrust law would still be served where such a claim was presented to arbitration and that the federal courts would have "the opportunity at the award enforcement stage to ensure that the legitimate interest in the enforcement of the antitrust laws has been addressed." 105 S.Ct. at 3360.

---

**4.** *Smoky Greenhaw Cotton v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 785 F.2d 1274, 1281 (5th Cir.1986); *McMahon v. Shearson/American Express, Inc.*, 618 F.Supp. 384, 387 (S.D.N.Y.1985); *Wilcox v. Ho-Wing Sit*, 586 F.Supp. 561, 567 (N.D.Cal.1984); *Universal Marine Insurance Company, Ltd.*, 588 F.Supp. 735, 739 (W.D.N.C.1984).

**5.** *West v. Drexel Burnham Lambert, Inc.*, 623 F.Supp. 26 (W.D.Wash., 1985); *Ross v. Mathis*, 624 F.Supp. 110 (N.D.Ga., 1985); *Jacobson v. Merrill Lynch, Pierce, Fenner and Smith*, CCH Fed.Sec.L.Reptr. 92,176 (W.D.Pa., Apr. 19, 1985).

Similarly, the public interest in combating organized crime will continue to be served if RICO claims are subject to arbitration. Private plaintiffs will continue to bring actions to further RICO policies. Those policies will first be presented in arbitration; the federal courts will then have the opportunity to protect those interests through the enforcement of arbitration awards.

### 4. *Stay of Judicial Proceedings*

 Defendants ask this court to stay the judicial proceedings on Count II pending the arbitration of the remaining claims. The Supreme Court in *Byrd* held that where a complaint contains both arbitrable state law claims and non-arbitrable federal claims, the court must order arbitration of the arbitrable claim. The Court did not indicate that the judicial proceedings on the non-arbitrable claims should be delayed. Rather, the Court contemplated that the judicial proceedings and the arbitration proceedings should both progress, albeit in a "piecemeal" fashion. 105 S.Ct. at 1242–43. Justice White, concurring, stated that:

> [O]nce it has been determined that the two proceedings are to go forward independently, the concern for speedy resolution suggests that neither should be delayed. While the impossibility of the lawyers being in two places at once may require some accommodation in scheduling, it seems to me that the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course.

105 S.Ct. at 1245. *See also Austad v. Drexel Burnham Lambert, Inc.,* 638 F.Supp. 480 (N.D.Ill.1986) (Williams, J.).

### 5. *Conclusion*

Arbitration should proceed on all counts except Count II, however resolution of Count II should not be delayed by the arbitration of plaintiff's remaining claims. For these reasons, defendants' motion to compel arbitration of Count I and Counts III through VI is granted and defendants'

motion to stay the judicial proceedings on Count II is denied.

IT IS SO ORDERED.