Dixie J. O'NEILL, Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, et al., Defendants.

No. 84 C 3181.

United States District Court, N.D. Illinois, E.D.

Jan. 30, 1987.

Kenneth H. Hanson, Patrick J. O'Donnell, Frederic F. Brace, Jr., Brace & O'Donnell, Chicago, Ill., for plaintiff.

Peter R. Sonderby, Janet L. Reali, Chadwell & Kayser, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, Chief Judge.

This case is before us on the defendants motion for summary judgment. Because we find that the single-sentence decision of the arbitrator denying plaintiff's state law claims is too ambiguous to bar plaintiff's federal claims on the grounds of collateral estoppel, the motion for summary judgment is denied.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff Dixie O'Neill sued defendants Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") and Scott Franz in this court on April 12, 1984, alleging various claims under the federal securities laws and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* On October 29, 1984, we dismissed the complaint for failure to comply with the particularity requirements of Rules 8 and 9(b) of the Federal Rules of Civil Procedure and for failure to allege the necessary elements of a RICO action. *O'Neill v. Merrill Lynch,* No. 84 C 3181, Memorandum Op. at 2–3 (N.D.Ill. Oct. 29, 1984) (Grady, J.) [Available on WESTLAW, DCTU database]. Plaintiff, instead of amending the complaint at that time, filed an arbitration motion requesting that we order arbitration of her nonfederal claims and stay proceedings with respect to any federal claims. We granted this motion.

Plaintiff submitted her claims against the defendants to arbitration before the New York Stock Exchange on January 4, 1985. The arbitration hearing was held in Chicago on November 7, 1985. In her "statement of claim," plaintiff alleged that in 1980, she opened a brokerage account with Merrill Lynch and that Franz was

assigned as her account executive. Statement of Claim at ¶ 2. She alleged that Franz induced her to sell, at substantial losses, all but one issue in her existing account "in order to generate commissions and create a large cash balance therein." *Id.* at ¶ 7. Franz is alleged to have deliberately misstated Merrill Lynch's "margin requirement"—the amount of equity that customers were obliged to maintain in their accounts—to be 35% rather than the actual figure of 30% to induce the sales by plaintiff. *Id.* at ¶¶ 7–8. O'Neill also alleged that Franz misrepresented material facts about certain securities in order to induce purchases by the plaintiff, *id.* at ¶ 9, and made unauthorized trades of her stock that caused further substantial losses. *Id.* at ¶¶ 10–12.

The hearing lasted an entire day and the transcript covers 300 pages. Both plaintiff and defendant Franz were extensively examined and cross-examined. The arbitrators' decision states only that "having heard and considered the proofs of the parties; [we] have decided and determined the claim of the claimant is hereby in all respects dismissed...." Appendix to Defendants' Memorandum of Law in Support of Motion for Summary Judgment, Exhibit C at 1.

On April 29, 1986, six months after the arbitration decision, plaintiff filed an Amended Complaint in this court. This document is remarkably similar to the statement of claim presented to the arbitration panel. Plaintiff's claims are repeated almost verbatim; she describes precisely the same transactions by Franz. Amended Complaint at ¶¶ 10–18; Statement of Claim at ¶¶ 7–12. All transactions enumerated in the Amended Complaint were also listed in the Statement of Claim. The "new" material in the Amended Complaint is found in its first five paragraphs, in which plaintiff states that her claim is based on an alleged violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1984). Plaintiff has also added new characterizations of Franz's conduct in the transactions; the treatment of plaintiff constituted a "scheme to defraud" through "untrue and reckless" statements about the margin requirements (Amended Complaint at ¶¶ 10–15) and the worth of securities (*id.* at ¶ 16). Plaintiff also adds a paragraph alleging Merrill Lynch's vicarious liability for Franz's actions "because of the complete failure to adequately supervise O'Neill's account and the trading activities of the defendant Franz therein." Amended Complaint at ¶ 20.

Both defendants have moved for summary judgment, asserting that claims alleged in plaintiff's Amended Complaint are identical to those heard and decided by the arbitrators and therefore barred from relitigation by the doctrines of res judicata and/or collateral estoppel. Defendants' Motion for Summary Judgment at 2. Plaintiff responds that because exclusive jurisdiction to hear Rule 10b–5 claims is reserved for the federal courts, the arbitrators' decision can have no preclusive effect on the federal securities law allegations in the Amended Complaint. Plaintiff's Response to Defendants' Motion at ¶ 4. Plaintiff also argues that the panel of arbitrators was dominated by its security industry representatives, who improperly failed to grant any of plaintiff's discovery requests. *Id.* at ¶¶ 7–10. Finally, plaintiff states that the panel "had no knowledge, capacity or ability to apply the correct standard of proof to the plaintiffs claims." *Id.* at ¶ 11. We will consider these arguments in turn but shall first address the issue of whether Rule 10b–5 claims are arbitrable in the first instance.

## DISCUSSION

### Arbitrability of Rule 10b–5 Claims

In *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Supreme Court specifically left unsettled the question of whether claims under federal securities laws and regulations were arbitrable, as the issue was not properly before the Court. *Id.* at 215–16 n. 1, 105 S.Ct. at 1240 n. 1. In a concurring opinion, Justice White noted that the arbitrability of claims under the 1934 Act "is a

matter of substantial doubt [and] the question remains open." *Id.* at 224-25, 105 S.Ct. at 1244 (White, J., concurring). Defendants state that the arbitrability of claims arising under Rule 10b-5 (a rule promulgated under the 1934 Act) remains an open question in the wake of *Byrd.* Defendants' Memorandum in Support, at 3 n. 1.

However, the question is not an open one in this court, as the Seventh Circuit has held in *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 558 F.2d 831 (7th Cir.1977) that Rule 10b-5 claims are not arbitrable. The *Weissbuch* court recognized the conflicting policies involved: on the one hand, the strong preference for enforcement of arbitration contracts as a means of solving private conflicts without litigation; on the other hand, the federal interest in protection for the securities investor. The court found that the balance tipped toward protection of the federal interest, citing "Congress' overriding concern for the protection of investors," as enunciated in *Wilko v. Swan,* 346 U.S. 427, 437, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953) (1933 Act). *Weissbuch,* 558 F.2d 831, 836 (quoting *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 538 F.2d 532, 536-37 (3d Cir.), *cert. denied,* 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976)).

Two judges in this district have recently declined to follow *Weissbuch* and have held that claims under Rule 10b-5 are arbitrable, reasoning that *Byrd* and *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("international" antitrust claims are arbitrable despite exclusive federal antitrust jurisdiction) established a very strong preference for arbitration, even of federal law claims, and that, as a result, this circuit would no longer follow *Weissbuch. Steinberg v. The Illinois Co., Inc.,* 635 F.Supp. 615, 619 (N.D.Ill.1986) (Duff, J.); *Austad v. Drexel Burnham Lambert, Inc.,* 638 F.Supp. 480, 483 (N.D.Ill.1986) (Williams, J.). Other judges of this district have followed *Weissbuch,* reasoning that since the majority opinion in *Byrd* specifically reserved ruling on the arbitrability question, *Weissbuch* remains binding precedent in this circuit and Rule 10b-5 claims may not be arbitrated. *Winkler v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 642 F.Supp. 122, 126 (N.D.Ill.1986) (Aspen, J.); *Goldberg v. Drexel Burnham Lambert, Inc.,* No. 83 C 8586, Memorandum Op. at 4-5 (N.D.Ill. Jan. 15, 1986) (Decker, J.) [Available on WESTLAW, DCTU database]; *Robert A. Stone and Associates v. Drexel Burnham Lambert, Inc.,* No. 85 C 6927, Memorandum Op. at 3 (N.D.Ill. Nov. 15, 1985) (Leighton, J.) [Available on WESTLAW, DCTU database]. *See also Conover v. Dean Witter Reynolds,* 794 F.2d 520, 525-26 (9th Cir.1986) (the "exercise of judicial direction" to ensure the effectiveness of federal securities legislation pre-empts arbitration concerns; Rule 10b-5 claims held not arbitrable).

■ We elect to follow the precedent of *Weissbuch* absent *definitive* direction from the Supreme Court indicating that Rule 10b-5 claims are arbitrable. While *Byrd* and *Mitsubishi* have emphasized the strength of the pro-arbitration policy, nothing in either case would necessarily compel the Seventh Circuit to alter its "balancing" analysis of *Weissbuch;* the policy favoring federal judicial protection for investors is more pronounced than the policy favoring judicial resolution of international antitrust claims developed in *Mitsubishi.* We hold that claims under Section 10(b) and Rule 10b-5 are not arbitrable.

**Collateral Estoppel Effect of the Arbitration Decision**

■ Arbitrability of Rule 10b-5 claims is a peripheral issue in this case. The central issue is what preclusive effect the arbitrator's decision has on our treatment of the case; whether plaintiff is collaterally estopped from asking this court to consider the facts supporting the federal claims that necessarily remain before us.[1]

---

**1.** Under the doctrine of collateral estoppel, once a court [or arbitration panel] has decided an issue necessary to its judgment or award, that decision is conclusive in a subsequent suit on a

■ Plaintiff seems to argue that the non-arbitrability of Rule 10b–5 claims renders collateral estoppel inapplicable to her Amended Complaint. However, it is fairly well established that "an arbitration decision can have res judicata or collateral estoppel effect, even if the underlying claim involves the federal securities laws." *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir.1985); *Schattner v. Girard, Inc.*, 668 F.2d 1366, 1369 (D.C.Cir.1981). Collateral estoppel may be applied when "the legal theories vary between the two actions, but the first necessarily involved the litigation and determination of a matter raised again in a subsequent case." *Davis v. Chevy Chase Financial Ltd.*, 667 F.2d 160, 172 (D.C.Cir. 1981). The application of collateral estoppel is committed to the sound discretion of the trial court. *Greenblatt*, 763 F.2d at 1360.

■ The use of collateral estoppel to bar litigation of previously arbitrated factual issues is compatible with the *Weissbuch* holding denying the arbitrability of federal securities law claims. The *Weissbuch* court sought to uphold Congress' desire to protect the individual investor by guaranteeing federal judicial review of securities claims. Yet arbitration of securities claims would be fruitless if the losing party could always completely relitigate the case in federal court. Federal courts, through the judicious use of collateral estoppel, can preserve the effectiveness of arbitration; by giving the arbitration decision some preclusive effect in the federal action, the arbitrator's fact-finding efforts are not needlessly duplicated. At the same time, the federal court's review of the arbitration hearing and decision—a review that must be undertaken to determine if the circumstances of the case warrant the application of collateral estoppel—ensures the investor's legislatively-created right to a federal forum for his securities claim.

### Application of Collateral Estoppel in This Case

Collateral estoppel precludes relitigation of issues in a subsequent proceeding when:

(1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical.

*Kunzelman v. Thompson*, 799 F.2d 1172, 1176 (7th Cir.1986). The first factor is clearly satisfied, as the parties are identical. As we noted earlier, the issues are identical as well; every transaction listed in plaintiff's Amended Complaint was listed in her Statement of Claim before the arbitration panel.[2] Further, these issues were

---

different cause of action involving a party to the prior litigation. *Kunzelman v. Thompson*, 799 F.2d 1172, 1176 (7th Cir.1986). "Collateral estoppel" thus differs from "res judicata" in that res judicata bars only identical *claims* from relitigation between the same two parties or privies. Collateral estoppel may still be applied where, as in this case, plaintiff brings this action under a different legal theory than presented to the arbitration panel; the factual issues behind the claims are identical even though the nature of the claims differ. *See Jones v. City of Alton,* 757 F.2d 878, 879 n. 1 (7th Cir.1985); 1B J. Moore & J. Lucas, *Moore's Federal Practice,* ¶ 0.441[1] at 718–27 (1983).

**2.** Defendants' Memorandum in Support of Motion for Summary Judgment sets out, accurately and without contradiction by plaintiff, the correspondence between the allegations in the Amended complaint and those in the Statement of Claim.

| Amended Complaint (paragraph) | Arbitration Claim (paragraph) |
| --- | --- |
| 1–5 (jurisdiction and venue) | 1 (jurisdiction) |
| 6 | 2 |
| 7 | 5 |
| 8 | 3 |
| 9 | 6 |
| 10 | 7 |
| 11 | 8 |
| 12 | 8 |

"actually litigated." Our review of the hearing record reveals that every transaction at issue in the Amended Complaint was placed before the panel through the testimony of the plaintiff and/or the defendant Franz. The table supplied by defendants in their Memorandum in Support of Motion for Summary Judgment is an accurate one:

| Amended Complaint (paragraph) | Transcript of Hearing (pages) |
| --- | --- |
| 10 | 28–33; 131–36; 210–12 |
| 11 | 33–35; 235–37 |
| 12 | 35–37; 162; 237–39 |
| 13 | 40–43 |
| 14 | 43–45 |
| 15 | 45–47; 261–70 |
| 16 | 37–40; 154–57; 225–29; 258–59 |
| 17 | 78; 222–23 |
| 18 | 47–52; 180–82; 249–52; 270–72 |
| 21 | 77–80 |

Defendants' Memorandum at 6.

The difficult question in determining whether to apply collateral estoppel in this case is whether the arbitrators necessarily resolved and decided the issues on the merits. The panel's decision consists of no more than a sentence dismissing plaintiff's claim "in all respects." In *Timberlake v. Oppenheimer & Co., Inc.,* Fed.Sec.L.Rep. (CCH) ¶ 92, 336 (N.D.Ill.1985) [Available on WESTLAW, DCTU database], the court declined to invoke collateral estoppel based on an arbitration decision of the New York Stock Exchange. The arbitrators had awarded the plaintiffs $30,000 and assessed the costs equally against both sides. The court stated, "The arbitration panel's award here is simply too conclusory to allow the court to decide what facts were 'necessarily determined' in that proceeding. Timberlake advanced a series of alternative theories of recovery and the arbitrators did not identify the theory on which they based their award." *Id.* at 92, 231 (quoting earlier opinion in case).

 The ambiguity of the arbitration decision in this case is of a different sort, but it still prevents us from applying collateral estoppel. The instant case differs from *Timberlake* in that the arbitrators, by denying all the claims of the plaintiff and awarding no damages, made it clear that they had decided all of the factual issues in

| Amended Complaint (paragraph) | Arbitration Claim (paragraph) |
| --- | --- |
| 13 | 10 |
| 14 | 8 |
| 15 | 11 |
| 16 | 9 |
| 17 | 14 |
| 18 | 12 |
| 19 | 13 |
| 20 (Merrill Lynch liable for failure to supervise its employee Franz) | — |
| 21 | 15 |

Defendants' Memorandum at 5.

the defendants' favor. What is not clear is the standard of proof applied in making that decision. A finding of a violation of Section 10(b) requires only that the plaintiff muster a preponderance of the evidence. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). However, common-law civil fraud rules require that the defendants' liability be shown by "clear and convincing" evidence. *See, e.g., Chicago College of Osteopathic Medicine v. George A. Fuller Co.,* 719 F.2d 1335, 1347 & n. 15 (7th Cir.1983). There is nothing in the transcript or the New York Stock Exchange Arbitration Rules (which the defendant includes as Exhibit E to his motion) to indicate what standard was or should have been used, and we have no way of knowing what standard of proof was in fact applied by the panel. It is possible that the panel used the "clear and convincing" standard in denying the plaintiff's claims, and thus did not "necessarily" rule on whether the plaintiff's proof was insufficient to meet the "preponderance of the evidence" test used in federal securities law claims. A difference in the burden of proof applied to two actions precludes the application of collateral estoppel to the issues in the case, unless the burden in the second action is more stringent for the plaintiff than in the first. *Kunzelman,* 799 F.2d at 1176–77. Because the arbitrators' perfunctory decision reveals nothing about the standard of proof used, we cannot invoke collateral estoppel in this case and the defendants' motion for summary judgment must be denied.[3]

## CONCLUSION

The defendants' motion for summary judgment is denied. This case is set for a status hearing on February 24, 1987, at 9:30 a.m.

---

3. Our disposition of this motion obviates the need to review plaintiff's allegations of bias and improper discovery rulings on the part of the arbitrators.