Frederick L. KUNZELMAN,
Plaintiff-Appellant,
Cross-Appellee,

v.

Gervase THOMPSON, Richard Giese
and Juneau County, Wisconsin,
Defendants-Appellees, Cross-Appellants.

Nos. 85–1624, 85–1662.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 13, 1986.
Decided Aug. 25, 1986.

Richard B. Jacobson, Borns, Porter, Macaulay & Jacobson, Madison, Wis., for plaintiff-appellant, cross-appellee.

Rick J. Mundt, Thurow, Sauthoff & Alexander, Madison, Wis., for defendants-appellees, cross-appellants.

Before CUMMINGS, Chief Judge, BAUER and POSNER, Circuit Judges.

CUMMINGS, Chief Judge.

Plaintiff brings this 42 U.S.C. § 1983 action claiming that the defendants violated his constitutional right to assist other inmates by prosecuting him for practicing law without a license. The district court entered a judgment notwithstanding the verdict holding that as a matter of law plaintiff had not established lack of access to the courts. For the reasons set out below we affirm.

**Statement of the Case and Facts**

Frederick L. Kunzelman brought this 42 U.S.C. § 1983 action against defendants Sheriff Gervase Thompson, Chief Deputy Richard Giese, and Juneau County, Wisconsin. Plaintiff, an inmate at the Juneau County Jail, alleges that defendants violated his First and Fourteenth Amendment rights by criminally prosecuting him for assisting two inmates write post-conviction writs. After a two-day trial the jury returned a verdict for plaintiff and awarded him $1,000 compensatory and $10,000 punitive damages against each individual defendant. Judgment was entered on December 5, 1984. On December 12, 1984, defendants moved for judgment notwithstanding the verdict, which was granted January 18, 1985. Following denial of post-trial motions, plaintiff appealed. Defendants have cross-appealed from the denial of a motion for a new trial.

Frederick Kunzelman is an inmate at the Juneau County Jail. On September 30, 1983, Juneau County District Attorney Daniel Berkos charged plaintiff with practicing law without a license, a misdemeanor violation of Wisc. Stat. § 757.30(2). The complaint was initiated by Berkos and signed by defendant Chief Deputy Sheriff Giese after the plaintiff rendered legal assistance[1] to two other inmates. Kunzelman assisted both Ronald Spencer (April 1983) and Jose Guevara (September 1983) prepare post-conviction petitions for credit for pre-sentence detainment. Both inmates were ultimately successful in their petitions and were released. Kunzelman received no compensation for his assistance.

The defendants concede that Berkos felt a great deal of animus toward the plaintiff because of an abundance of litigation on Kunzelman's own behalf.[2] Berkos was present at the hearing on Guevara's petition when he discovered Kunzelman's writ-writing activities. Both he and Giese ordered an investigator, Kim Stropolis, to look into the Guevara situation. As a re-

---

1. According to the record, the plaintiff has had some formal legal education; it is not clear how much.

2. Kunzelman only challenges the prosecution against him on the basis of his purported right to assist other inmates under *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718. Although the theory was raised to the jury in opening and closing arguments, he does not argue on appeal that the prosecution violated his right to be his own jailhouse lawyer. See *Sigafus v. Brown*, 416 F.2d 105 (7th Cir.1969); *Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984). Thus we do not address the issue.

sult of this investigation they were informed that Guevara approached Kunzelman for help, Kunzelman was not compensated, another inmate had been assisted earlier, and Kunzelman's position was that these activities were constitutionally protected under *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718. Nevertheless, a criminal complaint was sworn out against Kunzelman on September 30, 1983, and served on October 7, 1983.[3] Judge Latton dismissed the charge in March 1984, finding that Kunzelman's activities were clearly protected. This § 1983 action soon followed.

Kunzelman raises two issues on appeal. First, he argues the district court erred in denying his motion in limine that defendants were collaterally estopped from relitigating the constitutional issue. Second, he argues that the district court erred in granting the motion for judgment notwithstanding the verdict. We affirm.

## I. Defendant Sheriff Thompson

■ The district court ruled that plaintiff's evidence was insufficient to show personal involvement by Sheriff Gervase Thompson. In its judgment notwithstanding the verdict, the district court ruled that Thompson was not directly involved in the decision to prosecute Kunzelman. At oral argument plaintiff's counsel conceded that the evidence against Thompson was slim. The only evidence linking Thompson to the criminal prosecution attempt was his county relationship with Berkos. Plaintiff contends that the fact that Thompson and Berkos had lunch on a daily basis and discussed (at least informally) Kunzelman's prosecution was evidence of Thompson's involvement. The plaintiff further argues that Thompson's involvement can be inferred from his failure to discourage Berkos actively. This evidence could in no way support a finding of liability on the part of Thompson. While plaintiff argues that Thompson's inaction should be sufficient personal involvement, such involvement requires more than motive, more than a desire to take action, more than support and encouragement—it takes some act to infer that the defendant has assisted the violation. *Hampton v. Hanrahan*, 600 F.2d 600, 630 (7th Cir.1979), reversed on other grounds, 446 U.S. 754, 101 S.Ct. 411, 66 L.Ed.2d 308. It is arguable that given a duty to act, inaction would be sufficient evidence of personal active involvement, but such is not the case here. Thompson had no duty or responsibility to ensure that the district attorney's office exercised its prosecutorial discretion in a manner that did not offend citizens' constitutional rights. The district court was correct in holding that as a matter of law there was not sufficient evidence to show that Thompson was personally involved in initiating Kunzelman's prosecution.

## II. Collateral Estoppel

Kunzelman first contends that collateral estoppel precludes defendants from relitigating the issue of whether his writ-writing activities were constitutionally protected. Plaintiff claims that under *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308, dismissal of the criminal charge should act to bar the defendants from introducing evidence as to the adequacy of the Juneau County Jail inmates' access to the courts. The district court denied plaintiff's motion in limine to that effect. Defendants respond by arguing first, that they did not have a full and fair opportunity to litigate the issue in the state criminal proceeding and second, that they were not parties nor privies in the prior proceeding. We agree with defendants that collateral estoppel should not apply.

---

**3.** Defendants' counsel conceded that this was "unusual" because most prosecutions under § 757.30(2) are initiated by lawyers or clients and therefore this complaint was indicative of Berkos' motive to quell Kunzelman's litigation efforts. It is ironic that the filing of Berkos' criminal complaint subjected him to further court proceedings since he was initially named as a defendant in the present lawsuit. Berkos was eventually dropped as a defendant because of his absolute prosecutorial immunity.

■ Under the doctrine of collateral estoppel, once a court has decided an issue necessary to its judgment, that decision is conclusive in a subsequent suit on a different cause of action involving a party to the prior litigation. *United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379; *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210.[4] In *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308, the Supreme Court held that collateral estoppel is as applicable to § 1983 actions as it is to other types of suits. In determining when collateral estoppel applies federal courts must look to state law and determine whether another state court would give preclusive effect to the prior proceeding. *Id.* at 96, 101 S.Ct. at 415; *Migra v. Warren City School Dist.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56, see 28 U.S.C. § 1738. In general, collateral estoppel precludes relitigation of issues in a subsequent proceeding when: (1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical. *County of Cook v. Midcon Corp.*, 773 F.2d 892, 898 (7th Cir. 1985); *Whitley v. Seibel*, 676 F.2d 245, 248 & n. 1 (7th Cir.1982), certiorari denied, 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198; *Reckner v. Reckner*, 105 Wis.2d 425, 314 N.W.2d 159, 165 (1981) (collateral estoppel bars relitigation of issues "litigated, determined, and necessary to the [prior] decision").

■ But when a federal court has serious doubts about the fairness, quality, or extensiveness of the earlier state court proceedings, it will not apply collateral estoppel. *Montana v. United States*, 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 979 n. 11, 59 L.Ed.2d 210; *Lumen Construction, Inc. v. Brant Construction Co.*, 780 F.2d 691, 697

(7th Cir.1985). Due process does not permit application of collateral estoppel against a party who did not have a full and fair opportunity to litigate the issue in the earlier proceeding. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481 n. 22, 102 S.Ct. 1883, 1897 n. 22, 72 L.Ed.2d 262; *Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595; *Jones v. City of Alton*, 757 F.2d 878, 884 (7th Cir.1985).

■ A. We must first address an issue not specifically raised by the parties, but relevant to our discussion. In § 1983 actions typically the government as defendant attempts to assert collateral estoppel against a plaintiff who had been convicted (or received some similar unfavorable ruling during the criminal proceeding, *e.g.* denial of a motion to suppress based on Fourth Amendment grounds) in a previous state criminal trial. See *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308; *Whitley v. Seibel*, 676 F.2d 245 (7th Cir. 1982), certiorari denied, 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198. The differing burdens of proof do not present a problem in this scenario because it is assumed that if the government could have initially proven guilt beyond a reasonable doubt (or no Fourth Amendment violation) it would have no trouble defending the issue when the plaintiff carries the burden in a § 1983 action. Issue preclusion may be defeated by shifts in the burden of persuasion or by changes in the degree of persuasion required to prevail. *Guenther v. Holmgreen*, 738 F.2d 879, 888–889 (7th Cir.1984), certiorari denied, 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329; see 18 C. Wright, A. Miller, E. Cooper, Federal Practice & Procedure § 4422, at 209 (1980). When the criminal defendant has prevailed under the government's higher burden of proof, it should not bar a later attempt by the government to satisfy a lower burden, or a

---

**4.** This doctrine differs from *res judicata*, which operates to bar further claims by parties or privies on the same cause of action when there has been a final judgment on the merits. See *Whitley v. Seibel*, 676 F.2d 245, 248 & n. 1 (7th Cir.1982), certiorari denied, 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198; Restatement (Second) of Judgments § 27 (1982) (*res judicata* is claim preclusion; collateral estoppel is issue preclusion).

shifted burden. *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438. Thus the criminal defendant turned plaintiff may not assert collateral estoppel against the state on issues requiring the state to shoulder the burden of proof.

Such is not the case here. In the state criminal proceeding Kunzelman was not defending on the basis that an arrest, search, seizure, or conviction violated his rights, only that his activities that the state sought to punish him for were in fact constitutionally protected. Therefore in the motion to dismiss Kunzelman carried the burden of proving that the writ-writing was protected under *Johnson v. Avery.* Because plaintiff carried the burden of proof on the issue in the prior proceeding, burden shifting is not a problem.

B. Defendants' first argument is that they did not have a full and fair opportunity to litigate the issue of the legality of Kunzelman's activities in the state criminal proceeding. The defendants claim that even though the issue was clearly raised by the defendants, briefed by both parties and argued at a hearing, without an evidentiary hearing the quality of the decision is doubtful, thus collateral estoppel should not apply.

 It is true that if there is reason to doubt the fairness of the state proceedings, federal courts will not apply collateral estoppel to preclude relitigation of issues decided by state courts. *Allen,* 449 U.S. at 104, 101 S.Ct. at 419; *Guenther v. Holmgreen,* 738 F.2d 879, 884 (7th Cir.1984), certiorari denied, 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329. Critical to the application of collateral estoppel is the guarantee that the party sought to be estopped had the opportunity and the incentive to litigate the issue aggressively. *Haring v. Prosise,* 667 F.2d 1133, 1141 (4th Cir.1981), affirmed, 462 U.S. 306, 103 S.Ct. 2368, 76

L.Ed.2d 595. But to qualify for full faith and credit, state proceedings need only satisfy the minimum procedural requirements of due process. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262; *Jones v. City of Alton,* 757 F.2d 878, 884 (7th Cir. 1985).

 This is not a case where the constitutional issues were not raised at all in the earlier proceeding. See, *e.g., Metros v. United States Dist. Ct.,* 441 F.2d 313 (10th Cir.1970); *New Jersey Ed. Assn. v. Burke,* 579 F.2d 764, 772–774 (3d Cir.1978), certiorari denied, 439 U.S. 894, 99 S.Ct. 252, 58 L.Ed.2d 239. Nor is it a situation where the preliminary hearing was cursory or the issue summarily disposed. See *Jones v. City of Alton,* 757 F.2d 878, 886 (7th Cir. 1985) (plaintiff did not have full and fair opportunity to litigate at earlier proceeding when his proffered evidence was rejected as irrelevant and immaterial); see also *Whitley v. Seibel,* 676 F.2d at 249–250; *Guenther,* 738 F.2d at 885–886. Instead, the issue of whether Kunzelman's activities were constitutionally protected was fully briefed and argued by both sides. A full evidentiary hearing is not always necessary to provide due process protection or a fair opportunity to litigate the issue. *Searing v. Hayes,* 684 F.2d 694, 695 (10th Cir.1982) (full and fair opportunity to litigate legality of search met even though plaintiff was denied evidentiary hearing). It is noteworthy that the state never requested an evidentiary hearing to present witnesses, although it was entitled to do so. See Wisc. Stat. § 971.31(4); *Krison v. Nehls,* 767 F.2d 344, 348–349 (7th Cir.1985) (party had the opportunity to raise collateral estoppel issues but failed to do so). Certainly the state had every incentive to argue this motion effectively; to lose would leave Kunzelman free to continue his writ-writing activities.[5] Moreover, because the state initiated the criminal proceedings it had

---

5. It is undisputed that District Attorney Berkos was attempting to thwart both Kunzelman's legal assistance to other inmates and his personal litigation pursuits because he had become irritated with the avalanche of paperwork Kunzelman was creating. With this goal in mind, it was certainly in Berkos' interest to fight the motion to dismiss since a win for Kunzelman would only encourage continued litigious behavior on his part.

every incentive to fight Kunzelman's motion to dismiss, see *Guenther*, 738 F.2d at 889, but simply did not exercise the opportunity it had.

C. Defendants next complain that they were not parties or privies to the previous litigation and therefore collateral estoppel may not be asserted against them. This point is troublesome. Of course the three defendants were not named plaintiffs in the case against Kunzelman; only the state was the named party in the criminal action. But a successive party may be in privity with a named party that represents the same legal interests. Strict identity of the parties is not necessary to achieve privity. *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 301 (7th Cir.1985). To be in privity the parties must be "so closely aligned that they represent the same legal interest." *Id.* at 315; see *Southwest Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir.1977), certiorari denied, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93. Indeed, if issues previously decided were asserted against someone not a party in the previous action, there is a great potential for due process violations. *Allen*, 449 U.S. at 95, 101 S.Ct. at 415; *Blonder-Tongue Labs v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788. The question here is whether the defendants were sufficiently involved in the conduct of the state court litigation to actuate principles of collateral estoppel. *Montana v. United States*, 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210.

Plaintiff's motion in limine raising collateral estoppel contained no assertion that the defendants had a hand in his earlier prosecution. If the allegations of plaintiff's complaint are read together with the motion, they only show that plaintiff alleged that defendants along with Berkos conspired to quell plaintiff's litigation activity and that defendants assisted by signing the complaint and failing to discourage Berkos. There is no allegation in the complaint, nor was evidence adduced at trial, that defendants had any say or assisted in the actual prosecution decisions. There is nothing in the record to conclude that defendants fall into the category of "persons for whose benefit and at whose direction a cause of action is litigated; ... '[o]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own'" and thus should be bound as if he or she had been a party to the record. *Id.* at 154, 99 S.Ct. at 974 (quoting *Souffront v. Compagnie Des Sucreries*, 217 U.S. 475, 486–487, 30 S.Ct. 608, 612, 54 L.Ed. 846). The district court was correct in denying the motion in limine because the defendants were not parties or privies to the criminal action.

III. Adequate Access to the Courts

Now we must decide whether Kunzelman's writ-writing activities were constitutionally protected. The prosecution of Kunzelman violated the other Juneau County Jail inmates' constitutional rights if it left them without alternative means of meaningful access to the courts.[6] *Buise v. Hudkins*, 584 F.2d 223, 228 (7th Cir.1978). In *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718, the Supreme Court held that inmates denied access to li-

---

6. Plaintiff also asserts that he has a constitutional right to assist other inmates independent of their right to receive such assistance. Defendants do not contest that such a right exists, although the case law is unclear on the point. In order for Kunzelman to be awarded damages he must prove that he had an independent right to serve as a jailhouse lawyer for other inmates. *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir. 1978), certiorari denied, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466. *Buise* explicitly left open the possibility that such a First Amendment right exists. See *id.* at 230 (citing *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495; *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125, 97 S.Ct. 2532, 2537, 53 L.Ed.2d 629; *Sigafus v. Brown*, 416 F.2d 105 (7th Cir.1969)). Because defendants did not challenge the damages awarded to plaintiff, see *Buise*, 584 F.2d at 229, we do not address the issue.

braries [7] and public defenders had a constitutional right to seek legal assistance from other inmates. The Court stated, "unless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation ... barring inmates from furnishing such assistance to other prisoners." *Id.* at 490 & n. 11, 89 S.Ct. at 751 & n. 11.

■ Here the district judge's decision to enter a judgment notwithstanding the verdict must be reviewed *de novo* (C. Wright & A. Miller, Federal Practice & Procedure § 25.24 n. 40) and the evidence is to be viewed in the light most favorable to the non-moving party. Unless there is no evidence from which a jury could reasonably find for the party against whom the verdict is directed, the judgment withstanding the verdict must be reversed. *Selle v. Gibb,* 741 F.2d 896, 900 (7th Cir. 1984).

■ This right to receive assistance from other prisoners is conditioned upon a showing that the inmates in question did not have adequate access to the court without the help of an inmate writ-writer. *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72; *Buise v. Hudkins,* 584 F.2d 223, 228 (7th Cir.1978). The state bears the burden of demonstrating the adequacy of the alternative means of access it provides. *Buise,* 584 F.2d at 228. In the Supreme Court cases (*Johnson* and *Bounds*) the plaintiffs attacked the *system* of legal assistance available. Here Kunzelman does not argue that the public defender system is inadequate, merely that the otherwise adequate system failed to provide Spencer and Guevara adequate and meaningful access to the courts, given their particular situations.

■ We hold that once the state has shown the actual availability of a regular system of assistance by public defenders of which the inmates are generally aware, it has met its burden under *Johnson v. Avery.* The plaintiff then bears the burden of showing that under the particular circumstances the assistance was either not available to the inmates helped or that they were not aware of the system's availability. See *Buise,* 584 F.2d at 228–229; *Johnson v. Avery,* 393 U.S. at 489, 89 S.Ct. at 750. This burden allocation protects the inmates' right to meaningful access without overburdening the government to prove facts not easily at its disposal.

■ The defendants put on sufficient evidence before the district court to show both that there was a regular system of assistance provided and that the inmates were generally aware of the public defender's availability. There was testimony that the public defender's office represented inmates at the county jail from pre-trial through to post-conviction matters. The attorney responsible for the jail population, Ina Pogainis, visited the jail twice a week to speak with inmates and called every day to inquire if anyone needed help or had questions. Additionally, inmates were given direct phone access to the public defender's office so that they could initiate conversations with that office. Pogainis testified that she explained to everyone using the office that they could request one change of attorney without reason. The Juneau County jailer had a great concern for the ability of these inmates to get legal representation and communicated between them and Pogainis. Both Spencer and Guevara were represented by attorneys through the public defender's office. This testimony meets the defendants' burden of showing the awareness of and availability of legal assistance. The burden then shifted to the plaintiff to establish that the otherwise adequate system failed to provide Spencer and Guevara the necessary assistance. This burden was not met by the plaintiff on the record.

Kunzelman notes that with respect to Guevara, Pogainis refused to petition the court for pre-trial detention credit immediately; Guevara wanted it done faster and

---

7. Defendants conceded at oral argument that the Juneau County Jail library was inadequate.

Therefore only the public defender program need be examined here.

so sought out other help. But this does not rise to the level of inadequate access to the courts. Pogainis merely exercised her professional judgment with which Guevara disagreed. Additionally, plaintiff did not contradict that Guevara was informed of his right to request a replacement for Pogainis.

The Spencer situation presents a more complicated problem. Spencer was represented by a private bar attorney via the public defender's office. Once he realized that if given credit for pre-trial detainment his sentence would be completed, he phoned that attorney. His attorney never answered his many attempts to contact him, evidently because the attorney had closed Spencer's file after sentencing. Understandably desperate, Spencer turned to Kunzelman. By itself, this could exemplify unavailability of access to courts for post-conviction relief. What stops that conclusion is a combination of testimony that (a) Spencer could have initiated contact with the public defender's office and (b) generally inmates were aware that if they were unsatisfied with the representation of the first appointed attorney, they could request another, no questions asked. According to the record, Spencer had the alternative to contact the public defender's office again for assistance. Without contrary testimony that Spencer was unaware of this alternative or thwarted in an attempt to take advantage of the alternative, the defendants' evidence of adequate access stands.

Because the defendants presented sufficient evidence of a regular system of legal assistance to the inmates at Juneau County Jail and that inmates were aware of its availability, plaintiff had to prove that under the circumstances the individual inmates he assisted lacked adequate and meaningful access to the courts. Since he failed to show that, no reasonable jury could have found for the plaintiff. The judgment of the district court that there was no constitutional deprivation must therefore be affirmed.

For the reasons discussed above the judgment of the district court is affirmed.[8]

---

**8.** Because we affirm the district court's judgment in favor of defendants, we do not address

their cross-appeal for a new trial.